## JAMES GLASS *v.* WM. HOWELL, N. M. HALL and J. W. SULLIVAN.

ADMINISTRATOR. *Sureties on bond liable for damages collected.* The sureties of an administrator, who has actually collected the damages sustained by the intestate by injuries resulting in his death, under the Code, sec. 2291, are liable, to the extent of the penalty of the administration bond, for the amount thus collected, although the administrator was permitted by the next of kin to retain the money until certain debts of the intestate, for which the fund was not legally liable, were paid out of it, a credit being allowed for the debts thus paid.

### FROM DICKSON.

Appeal from the Chancery Court at Charlotte. G. H. NIXON, Ch.

T. C. MORRIS for complainant.

JACOB LEACH for defendants.

COOPER, J., delivered the opinion of the court.

Bill against an administrator and his sureties, by the distributee, for the settlement of the administration. Upon taking the account, a balance was found in the hands of the administrator, for which the Chancellor rendered a decree against him, but refused to charge the sureties. The complainant alone appealed.

On the 3d of July, 1871, W. W. Pendergrass was killed by the breaking down of a bridge on a railroad. The defendant Wm. Howell was appointed administrator of the decedent's estate, and qualified by giving bond in the penalty of $500, with the defendants N. M. Hale and J. W. Sullivan as his sureties. On the 17th of August, 1871, Howell as administrator, and complainant as sole distributee and next of kin, met the agent of the railroad company, and agreed to receive $2500 in full of the damages for the injuries to the intestate which resulted in his death. The company took the joint receipt of both for the amount, but paid the whole sum to the defendant Howell at Nashville. The intestate was at his death a constable, and Howell was one of the sureties on his official bond. The complainant agreed, at the time of the settlement with the railroad company, that Howell might retain $1000 of the money, out of which to pay the debts of the intestate, who was a son of the complainant, if the other assets of the intestate proved insufficient. The defendant claimed that he had paid the entire $2500 to the complainant at her residence on the 19th of August, 1871, and received back $500 as a loan, for which he executed his note, and $500 as a gratuity for his services and to pay liabilities of

the estate.   The complainant insisted that he paid her on the occasion only the $1500 as agreed, and took back $500 by way of loan, for which he gave his note, which was afterward paid.   The Chancellor was satisfied that the latter was the correct version of the transaction, and in this conclusion we fully concur.

It is argued that the right of action for damages resulting in the death of an intestate, is not assets with which an administrator is officially chargeable. But this is directly in. conflict with the statute which expressly provides that the right of action for injuries resulting in death shall survive, and pass to the personal representative.   Code, §2291.   It is true, he may decline to sue, in which case the next of kin may use his name by giving security for costs.   Code, §2292.   The reason is, that there may be no assets with which to pay costs, and the personal representative may decline to actively proceed without security, and as, by the statute, the recovery enured to the next of kin, free from the claims of creditors, the next of kin were authorized to sue in his name, upon indemnifying him against costs.   If he acted, and received the fund, it would undoubtedly be as administrator. It does not appear that the Chancellor put his decision on this ground.   He seems rather to have thought that the money left with Howell was chargeable to him as an individual, and not as an administrator. If the money, after being paid to the complainant, had been by her handed back to the defendant Howell, as claimed by him, there would have been great force in the position.   But as we have seen, the evi-

Glass *v.* Howell.

dence is entirely conclusive that the money was received by Howell from the railroad company, and never paid to the complainant. The question is then resolved into this: does the fact that the complainant permitted him to retain the money, and for a purpose for which no part of it was liable in strict course of administration, namely, the payment of the intestate's debts, prejudice the complainant's right to treat the surplus over and above those debts as assets? It is common learning, that mere delay, whether negligent or intentional, will not affect the creditor's rights against a surety. It was the duty of the surety to see that the administrator paid the fund to the party entitled. It would be hard justice to deprive the complainant of a benefit to which she was otherwise clearly entitled, merely because she was willing that her son's debts should be first paid, and only the residue accounted for.

It was error to release the sureties, and they must be held bound to the extent of the penalty of the administration bond.